IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PEOPLE, TECHNOLOGY, AND )
PROCESSES, LLC, )
 )
    Plaintiff, )
 )
v. ) Civil Action No. 1:17-cv-282
 )
BOWHEAD LOGISTICS )
SOLUTIONS, LLC, )
 )
    Defendant. )

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant Bowhead Logistics Solutions, LLC's ("Defendant") Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff, People, Technology, and Processes, LLC ("Plaintiff" or "PTP") is a Florida small business that provides specialized Information Technology services. Defendant is an Alaskan company headquartered in Alexandria, Virginia, that provides a broad range of services to aerospace and defense customers. In 2014, the Government Services Administration awarded Bowhead a government-wide acquisition contract called the One Acquisition Solution for Integrated Services (OASIS). Around the same time period, the U.S. Army announced that it

would purchase field support services by way of a task order under the OASIS contract.

Plaintiff and Defendant worked together to compete for that task order, which was awarded to Defendant in July 2015. Thereafter, Defendant executed subcontract agreements with Plaintiff and with three other subcontractors. Under the subcontract between Plaintiff and Defendant, which took effect on February 12, 2016, Plaintiff was to provide IT professionals to various locations in the United States and abroad. The subcontract required that all personnel possess an active security clearance, as these employees would handle classified government information. The subcontract also required that Defendant pay for Plaintiff's services within thirty days of receiving an invoice for those services.

Soon after they began performing under the subcontract, it came to the parties' attention that one of the IT professionals who had been hired did not have an active security clearance. Plaintiff alleges that Defendant was aware that this employee lacked the proper clearance and that Defendant told Plaintiff to continue processing the employee's clearance, and to ensure that all future hires have the required clearance. Two months later, in October 2016, the parties learned that a second employee had been placed on the contract without an active clearance.

According to the Plaintiff, Defendant consistently failed to pay its invoices within the thirty days required by the subcontract. Plaintiff states that it raised the issue of payment delays with Defendant in July 2016, and that, in mid-November 2016, Plaintiff's CEO threatened to raise the issue with the Small Business Administration. On November 25, 2016, Defendant issued a notice of termination of the subcontract. In its notice, Defendant claimed that Plaintiff had defaulted on its obligation to provide personnel with the required security clearance. Defendant stated that it considered this a material and incurable breach of the subcontract. Plaintiff contends that there was no default, and that, in any event, Defendant was required to provide a proper cure notice to Plaintiff before terminating the subcontract for default.

Plaintiff alleges that shortly after the termination of the subcontract, Defendant, along with the other subcontractors, recruited and hired Plaintiff's employees. Plaintiff's employees were bound by non-competition agreements, and Plaintiff claims that it notified Defendant about these agreements and demanded that Defendant stop recruiting its employees. According to Plaintiff, Defendant and the other subcontractors hired twenty-six of Plaintiff's employees, diverting millions of dollars in contract revenue from Plaintiff.

Plaintiff filed an eight-count complaint against Defendant on March 3, 2016. Plaintiff alleges the following counts: (I) breach of contract; (II) breach of the implied covenant of good faith and fair dealing; (III) *quantum meruit*; (IV) tortious interference with existing contract; (V) tortious interference with business expectancy; (VI) business conspiracy under sections 18.2-499 and 18.2-500 of the Virginia Code; (VII) declaratory judgment; and (VIII) partial specific performance. Defendant has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the following reasons, the claims contained in Counts II, V, VI, VII, and VIII fail to state a claim upon which relief can be granted and are therefore dismissed.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation

and quotations omitted). Complaints are required to allege "a *plausible* claim for relief" instead of merely stating facts that leave open "the *possibility* that a plaintiff might later establish some set of undisclosed facts to support recovery." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 587 (4th Cir. 2015) (emphasis in original).

The Court finds that Plaintiff has presented a plausible claim for relief in Count I (breach of contract), Count III (*quantum meruit*, in the alternative),[1] and Count IV (tortious interference with existing contract). As to all other counts, the Court finds that Plaintiff has not stated a plausible claim upon which relief may be granted.

Plaintiff does not present a plausible claim for relief in Count II (breach of the implied covenant of good faith and fair dealing), because the failure to act in good faith gives rise only to a cause of action for breach of contract and does not amount to an independent tort. See Charles E. Brauer Co., Inc.

---

[1] Defendant argues that recovery in *quantum meruit* is barred here because the subcontract governed the subject matter of the claim and the parties' relationship. Plaintiff contends that its *quantum meruit* claim is based on post-termination conduct not addressed by the subcontract—that is, that Defendant unjustly benefited from hiring PTP's employees. The Court will allow Plaintiff to press its *quantum meruit* claim as an alternative ground for relief for conduct that may have occurred outside the coverage of the subcontract. If the subcontract does not govern the post-termination hires, then *quantum meruit* may apply. If the subcontract does cover the events complained of in Count III, then an equitable remedy will not be available.

v. NationsBank of Va., N.A., 466 S.E.2d 382, 385 (Va. 1996).[2] Under Virginia law, every contract carries an implied covenant of good faith and fair dealing, but a claim for breach of that covenant is a claim for breach of contract. Rogers v. Deane, 992 F. Supp. 2d 621, 633. Thus, the failure to act in good faith does not amount to an independent tort, but gives rise only to a cause of action for breach of contract. Id. As a result, Count II should be dismissed.

Plaintiff does not present a plausible claim for relief in Count V (tortious interference with business expectancy), because the business expectancy that Plaintiff claims it had is too attenuated to be viable. To state a claim for tortious interference with a business expectancy, Plaintiff must show: (1) a valid business expectancy; (2) that Defendant knew of the expectancy; (3) that but for Defendant's interference, Plaintiff would have realized the expectancy; (4) that Defendant used improper means or methods to interfere with the expectancy, and (5) that Plaintiff suffered damages. Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 493 S.E.2d 375, 378 (Va. 1997).

---

[2] Plaintiff argues that the subcontract at issue is governed by and construed according to the law of Federal Government Contracts, and that to the extent federal contracting law does not resolve a particular issue, Virginia law applies. Because the Court finds no substantive difference between the two bodies of law as it pertains to claims for breach of contract, and because Plaintiff largely cites Virginia law in its opposition brief, the Court applies Virginia law.

Plaintiff claims that it had a business expectancy in its ability to transition the employees working on the subcontract to other contracts and programs once the subcontract was terminated. Plaintiff alleges that Defendant interfered with that expectancy by bribing three of Plaintiff's employees and inducing them to leave their employment with Plaintiff and work for Defendant instead. However, Plaintiff fails to identify future contracts or business expectancies with specificity. Plaintiff states that it intended to transfer three of its employees to a new program—the Aberdeen Information Technology Support Services program, in Aberdeen, Maryland. But Plaintiff also claims that it lost twenty-six employees to the Defendant and other subcontractors. The complaint fails to state if and where the remaining twenty-three employees would have transitioned. Furthermore, Plaintiff has not identified a particularized expectancy in the employees' willingness to transfer to this new program. Plaintiff's generalized allegation that it planned to transfer employees to substitute contracts and programs is insufficient to state a claim of tortious interference with business expectancy. As a result, Count V should be dismissed.

Plaintiff does not present a plausible claim to relief in Count VI (business conspiracy), because Count VI is not pleaded with particularity. A business conspiracy cause of action

7

arises when two or more persons "combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever." Va. Code. Ann. § 18.22-499. Business conspiracy must be pleaded with particularity, and with more than mere conclusory language. Gov't Employees Ins. Co. v. Google, Inc., 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citing Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003). This heightened pleading standards prevents every business dispute over unfair competition from becoming a business conspiracy claim. Id.

Count VI alleges that Defendant, along with the other subcontractors with whom it executed subcontract agreements, "wrongfully combined, associated, agreed, concerted together, and undertook [their] interference with PTP's contracts, and also with PTP's contractual expectancy, for the purpose of willfully and maliciously injuring PTP in its reputation, trade, business, or profession." Although Count VI incorporates all the facts alleged in the complaint, Plaintiff does little more than quote section 18.22-499 of the Virginia Code in this claim. Plaintiff alleges that Defendant and others compelled Plaintiff's employees to breach their non-competition agreements, but it fails to explicitly allege when and where the

business conspiracy was formed, what exactly the alleged conspirators agreed upon, and how the alleged conspirators decided to carry out their scheme. In sum, Plaintiff fails to allege particularized facts regarding the concerted action necessary to support a valid business conspiracy claim. As a result, Count VI should be dismissed.

Plaintiff does not present a plausible claim for relief in Count VII (declaratory judgment), because Count VII seeks the same relief that was already asked for in Count I of the complaint. In other words, Count VII's four alternative requests for declaratory judgment duplicate Plaintiff's breach of contract claim, because each request seeks a judgment that Defendant wrongfully terminated the subcontract at issue. A request for declaratory judgment is not warranted, as Plaintiff's claim for breach of contract will be properly adjudicated in its suit for damages. As a result, Count VII should be dismissed.

Plaintiff does not present a plausible claim for relief in Count VIII (partial specific performance), because specific performance is merely a remedy, not a cause of action. Specific performance constitutes an equitable remedy through which a plaintiff may be made whole after a breach of contract in lieu of a monetary award. See, e.g., Vienna Metro LLC v. Pulte Home Corp., 786 F. Supp. 2d 1076, 1088 (E.D. Va. 2011) ("When a

9

remedy at law is inadequate to compensate for non-performance, specific performance may be decreed.") (citing Chattin v. Chattin, 427 S.E.2d 347, 350 (Va. 1993)). Here, Plaintiff already seeks money damages for its alleged injuries, so its request for specific performance is improper. As a result, Count VIII should be dismissed.

For the foregoing reasons, the claims contained in Counts II, V, VI, VII, and VIII fail to state a claim upon which relief can be granted and are therefore dismissed.

An appropriate order shall issue.

*Claude M. Hilton*
VSDJ

May 23, 2017